IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| PAUL J. HENRY III, | : | Civil No. 3:21-cv-247 |
| Plaintiff | : | (Judge Mariani) |
| v. | : | |
| YORK COUNTY, *et al.*, | : | |
| Defendants | : | |

FILED
SCRANTON

MAR 0 8 2022

Per_____
DEPUTY CLERK

## MEMORANDUM

Plaintiff Paul J. Henry III ("Henry"), an inmate who was housed at all relevant times at the York County Prison, in York, Pennsylvania, commenced this action pursuant to 42 U.S.C. § 1983. (Doc. 1). Named as Defendants are, *inter alia*, PrimeCare Medical, Inc. ("PrimeCare"), Thomas Weber, William D. Cattell, M.D., Patricia Bennett, RN, Tammy Ruiz, Emily Glackin Lee, and Bette Ann Becker, LPN (collectively, "PrimeCare Defendants"). (Doc. 1). Presently pending before the Court is the PrimeCare Defendants' motion (Doc. 25) to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6). The motion is fully briefed and ripe for resolution. For the reasons set forth below, the Court will grant the motion.

### I. Allegations of the Complaint

Henry alleges that York County uses shackles that are too small and caused injury to his ankles. (Doc. 1, pp. 18, 23). He asserts that Defendants PrimeCare, Bennett, and Lee determined that he had "minor" bruising and abrasions on his ankles. (*Id.*). Henry states

that the PrimeCare Defendants "immediately" provided pain medication for his ankles. (*Id.* at p. 19). After further examination, the PrimeCare Defendants provided stronger pain medication for his ankles. (*Id.* at p. 23). On June 20, 2019, Defendants PrimeCare and Ruiz again treated Henry's leg through the wicket door on his cell. (*Id.* at p. 22). He was treated with Band-Aids and antibiotic ointment. (*Id.*). In October, 2020, Defendants PrimeCare and Dr. Cattell prescribed a muscle relaxer to treat Henry's ankles. (*Id.* at p. 28). Henry alleges that he was denied bottom bunk status by Defendants PrimeCare, Conway, Ruiz, and Bennett, despite having problems with his ankles. (*Id.* at pp. 27-28).

Henry next alleges that he has a nail fungus which causes his nails to fall off. (*Id.* at pp. 28-29). He alleges that Defendant Dr. Cattell examined his condition, but that Dr. Cattell stated he has never prescribed a pill or treatment for nail fungus in five years at the York County Prison. (*Id.*). He further alleges that he did not receive treatment for his nail fungus because Defendant Ruiz informed him that it was "a common problem." (*Id.* at p. 30). Dr. Cattell subsequently prescribed Lamisil to treat Henry's nail fungus. (*Id.*).

Henry alleges that he has not had his teeth cleaned despite undergoing yearly dental exams. (*Id.* at p. 37). He was allegedly informed that his teeth could not be cleaned because of the COVID-19 pandemic. (*Id.*). Henry also claims that he was informed that he would be scheduled for a cleaning, but as of the date of the filing of his complaint, he was not aware of the cleaning appointment being scheduled. (*Id.*).

2

Lastly, Henry alleges that he filed grievances related to his claims, but the grievances were "unanswered or ignored." (*Id.* at pp.37-39).

## II. <u>Legal Standard</u>

A complaint must be dismissed under FED. R. CIV. P. 12(b)(6), if it does not allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007). The plaintiff must aver "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 129 S. Ct. 1937, 1949, 173 L. Ed. 2d 868 (2009).

"Though a complaint 'does not need detailed factual allegations, . . . a formulaic recitation of the elements of a cause of action will not do.'" *DelRio-Mocci v. Connolly Prop. Inc.*, 672 F.3d 241, 245 (3d Cir. 2012) (citing *Twombly*, 550 U.S. at 555). In other words, "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Covington v. Int'l Ass'n of Approved Basketball Officials*, 710 F.3d 114, 118 (3d Cir. 2013) (internal citations and quotation marks omitted). A court "take[s] as true all the factual allegations in the Complaint and the reasonable inferences that can be drawn from those facts, but . . . disregard[s] legal conclusions and threadbare recitals of the elements of a cause of action, supported by mere conclusory statements." *Ethypharm S.A. France v. Abbott Laboratories*, 707 F.3d 223, 231, n.14 (3d Cir. 2013) (internal citations and quotation marks omitted).

> *Twombly* and *Iqbal* require [a district court] to take the following three steps to determine the sufficiency of a complaint: First, the court must take note of the elements a plaintiff must plead to state a claim. Second, the court should identify allegations that, because they are no more than conclusions, are not entitled to the assumption of truth. Finally, where there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement for relief.

*Connelly v. Steel Valley Sch. Dist.*, 706 F.3d 209, 212 (3d Cir. 2013).

"[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged - but it has not show[n] - that the pleader is entitled to relief." *Iqbal*, 556 U.S. at 679 (internal citations and quotation marks omitted). This "plausibility" determination will be a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.*

However, even "if a complaint is subject to Rule 12(b)(6) dismissal, a district court must permit a curative amendment unless such an amendment would be inequitable or futile." *Phillips v. Cnty. of Allegheny*, 515 F.3d 224, 245 (3d Cir. 2008).

> [E]ven when plaintiff does not seek leave to amend his complaint after a defendant moves to dismiss it, unless the district court finds that amendment would be inequitable or futile, the court must inform the plaintiff that he or she has leave to amend the complaint within a set period of time.

*Id.*

## III. Discussion

### A. Deliberate Indifference to Medical Needs

In the context of medical care, the Eighth Amendment "requires prison officials to provide basic medical treatment to those whom it has incarcerated." *Rouse v. Plantier*, 182

4

F.3d 192, 197 (3d Cir. 1999). To establish an Eighth Amendment claim based on a prison's denial of medical care, an inmate must allege acts or omissions by prison officials that were sufficiently harmful to establish deliberate indifference to a serious medical need. *See Spruill v. Gillis*, 372 F.3d 218, 235 (3d Cir. 2004); *Natale v. Camden Cty. Corr. Facility*, 318 F.3d 575, 582 (3d Cir. 2003). The relevant inquiry is whether the defendant: (1) was subjectively deliberately indifferent (2) to the plaintiff's objectively serious medical needs. *Farmer*, 511 U.S. at 834, 837; *Chavarriaga v. N.J. Dep't of Corr.*, 806 F.3d 210, 226 (3d Cir. 2015).

The "deliberate indifference" prong of the applicable Eighth Amendment analysis requires that the defendant actually know of and disregard "an excessive risk to inmate health or safety." *Farmer*, 511 U.S. at 837. Circumstantial evidence can establish subjective knowledge on the part of the defendant if it shows that the excessive risk was so obvious that the official must have known about it. *See Beers-Capitol v. Whetzel*, 256 F.3d 120, 133 (3d Cir. 2001) (citing *Farmer*, 511 U.S. at 842). The Third Circuit has found deliberate indifference when a prison official: "(1) knows of a prisoner's need for medical treatment but intentionally refuses to provide it; (2) delays necessary medical treatment based on a non-medical reason; or (3) prevents a prisoner from receiving needed or recommended medical treatment." *Rouse*, 182 F.3d at 197.

The second prong of the Eighth Amendment inquiry is whether the plaintiff's medical needs were serious. A serious medical need is "one that has been diagnosed by a

5

physician as requiring treatment or one that is so obvious that a lay person would easily recognize the necessity for a doctor's attention." *Monmouth Cty. Corr. Inst. Inmates v. Lanzaro*, 834 F.2d 326, 347 (3d Cir. 1987). Not every condition is a serious medical need; instead, the serious medical need element contemplates a condition of urgency, namely, one that may produce death, degeneration, or extreme pain. *See id.*

Additionally, because only egregious acts or omissions can violate this standard, mere medical malpractice cannot result in an Eighth Amendment violation. *White v. Napoleon*, 897 F.2d 103, 108-10 (3d Cir. 1990); *Estelle v. Gamble*, 429 U.S. 97, 106 (1976) ("[M]edical malpractice does not become a constitutional violation merely because the victim is a prisoner."). The Supreme Court has held that negligence or inadvertence alone do not rise to the level of a constitutional violation. *Whitley v. Albers*, 475 U.S. 312 (1986). The Supreme Court has also noted that "[l]ack of due care suggests no more than a failure to measure up to the conduct of a reasonable person." *Daniels v. Williams*, 474 U.S. 327, 332 (1986). Where a state of mind is relevant, the complaint is inadequate if it merely contains conclusory allegations describing the requisite state of mind such as "intentionally" or "recklessly" without supporting factual allegations. *Wilson*, 501 U.S. 294. Additionally, prison medical authorities are given considerable latitude in the diagnosis and treatment of inmate patients, see *Young v. Kazmerski*, 266 F. App'x 191, 194 (3d Cir. 2008) (nonprecedential), and a doctor's disagreement with the professional judgment of another doctor is not actionable under the Eighth Amendment. *See White*, 897 F.2d at 108-10.

Furthermore, it is well-settled that an inmate's dissatisfaction with a course of medical treatment, standing alone, does not give rise to a viable Eighth Amendment claim. *See Brown v. Borough of Chambersburg*, 903 F.2d 274, 278 (3d Cir. 1990) ("[A]s long as a physician exercises professional judgment his behavior will not violate a prisoner's constitutional rights."); *Pearson v. Prison Health Servs.*, 850 F.3d 528, 535 (3d Cir. 2017) ("[W]hen medical care is provided, we presume that the treatment of a prisoner is proper absent evidence that it violates professional standards of care.").

The allegations of the complaint do not establish that the PrimeCare Defendants acted with deliberate indifference. First, Henry acknowledges that he was immediately treated for his ankle injuries and provided pain medication. He continued to receive treatment for his ankles and was prescribed even stronger pain medication. Notably, Henry admits that he "does not allege [that] PrimeCare Defendants did not treat him for his injuries to his ankles caused by the use of shackles." (Doc. 41, p. 2). Regarding Henry's subjective belief that he should have been assigned to a bottom bunk, he does not allege that he suffered any falls while assigned to a top bunk. Moreover, Henry acknowledges that his assignment to a top bunk was only for "several weeks", until he received a bottom bunk status. (Doc. 1, pp. 27-28). Thus, at the time the PrimeCare Defendants allegedly denied Henry's request for a bottom bunk, he did not have a bottom bunk status.

Second, even assuming that nail fungus is a serious medical condition, Henry fails to allege that the PrimeCare Defendants were deliberately indifferent to his medical need.

Deliberate indifference requires a plaintiff to show that a defendant knowingly disregards an excessive risk to an inmate. See Natale, 318 F.3d at 582. Henry states that he was seen by medical staff for his nail fungus, but was initially told that no treatment was necessary, because it was a common problem. Dr. Cattell subsequently prescribed Lamisil. Henry's subjective dissatisfaction with his medical care is insufficient to state a claim for relief. See Lanzaro, 834 F.2d at 346; White, 897 F.2d at 110 (explaining that "[i]f the doctor's judgment is ultimately shown to be mistaken, at most what would be proved is medical malpractice, not an Eighth Amendment violation").

Third, Henry acknowledges that he received yearly dental examinations, but asserts that he did not receive teeth cleaning. Henry does not allege that any of the individually named PrimeCare Defendants were involved in the alleged denial of teeth cleaning. Moreover, the allegation regarding failure to receive teeth cleanings fails to state an Eighth Amendment deliberate indifference claim. See Vaughn v. Cambria Cty. Prison, 709 F. App'x 152, 155 (3d Cir. 2017) (nonprecedential) (the mere failure to provide a routine tooth cleaning does not create a serious medical need) (citing Hallett v. Morgan, 296 F.3d 732, 746 (9th Cir. 2002)).

Fourth, it appears that Henry seeks to hold the PrimeCare Defendants liable based upon their failure to respond to grievances. It has long been recognized that a state prisoner's allegation that prison officials and administrators responded inappropriately, or failed to respond, to a prisoner's complaint or grievance, is insufficient to establish personal

involvement in the underlying unconstitutional conduct. *See Rode v. Dellarciprete*, 845 F.2d 1195, 1207-08 (3d Cir. 1998) (concluding that after-the-fact review of a grievance is insufficient to demonstrate the actual knowledge necessary to establish personal involvement); *Brooks v. Beard*, 167 F. App'x 923, 925 (3d Cir. 2006) (nonprecedential) (holding that allegations that prison officials and administrators responded inappropriately, or failed to respond to a prison grievance, did not establish that the officials and administrators were involved in the underlying allegedly unconstitutional conduct). In accordance with the foregoing, any attempt by Henry to establish liability against the PrimeCare Defendants based upon their handling of his administrative grievances does not support a constitutional claim.

The allegations of the complaint reveal that Henry was examined by medical personnel, they took into consideration his symptoms and complaints, rendered treatment and medical advice, and prescribed medications. To the extent that Henry believes he should have received different treatment, this constitutes a "mere disagreement as to the proper medical treatment," and is not an actionable Eighth Amendment claim. *Lanzaro*, 834 F.2d at 346. It is clear that medical staff employed professional judgment in treating Henry's conditions every time he presented with complaints and symptoms. *See Brown*, 903 F.2d at 278. This precludes a finding that they acted with the "obduracy and wantonness" necessary to sustain an Eighth Amendment violation. *Whitley*, 475 U.S. at 319. Because

9

Henry has failed to identify any official conduct that exhibits deliberate indifference to his health or safety, he is not entitled to relief on this claim.

### B. *Monell* Claim against PrimeCare

PrimeCare, as a private entity contracted by a prison to provide health care for inmates, cannot be held liable for the acts of its employees under *respondeat superior* or vicarious liability. *Natale*, 318 F.3d at 583 (citing *Monell v. New York City Dep't of Soc. Servs.*, 436 U.S. 658, 691 (1978)). To hold PrimeCare liable, Henry "must provide evidence that there was a relevant [PrimeCare] policy or custom, and that the policy caused the constitutional violation [he] allege[s]." *Natale*, 318 F.3d at 584 (citing *Bd. of Cty. Comm'rs of Bryan Cty. v. Brown*, 520 U.S. 397, 404 (1997)). A plaintiff can establish causation by "demonstrat[ing] that the municipal action was taken with 'deliberate indifference' as to its known or obvious consequences." *Brown*, 520 U.S. at 407 (citation omitted). Henry wholly fails to meet his burden concerning a relevant PrimeCare policy or custom that caused a constitutional violation. Additionally, because Henry cannot demonstrate a violation of his constitutional rights by the PrimeCare Defendants, he cannot demonstrate a *Monell* cause of action. *See Johnson v. City of Phila.*, 837 F.3d 343, 354 (3d Cir. 2016) (holding that a *Monell* claim is not cognizable absent an underlying constitutional violation) (citing *Grazier ex rel. White v. City of Phila.*, 328 F.3d 120, 124 (3d Cir. 2003)). PrimeCare is entitled dismissal on this ground.

### C. Failure to File a Certificate of Merit

In Pennsylvania, medical negligence, or medical malpractice, is defined as "the unwarranted departure from generally accepted standards of medical practice resulting in injury to a patient, including all liability-producing conduct arising from the rendition of professional medical services." *Toogood v. Owen J. Rogal, D.D.S., P.C.*, 824 A.2d 1140, 1145 (Pa. 2003) (citing *Hodgson v. Bigelow*, 7 A.2d 338 (Pa. 1939)). The existence of an injury, by itself, does not prove a doctor's negligence. *Mitchell v. Shikora*, 209 A.3d 307, 315 (Pa. 2019) (citations omitted). Rather, to establish a cause of action for negligence under Pennsylvania law, a plaintiff must prove the following elements: (1) a duty or obligation recognized by law; (2) a breach of that duty; (3) a causal connection between the conduct and the resulting injury; and (4) actual damages. *See Northwestern Mut. Life Ins. Co. v. Babayan*, 430 F.3d 121, 139 (3d Cir. 2005) (citing *In re TMI*, 67 F.3d 1103, 1117 (3d Cir. 1995)).

Under Rule 1042.3 of the Pennsylvania Rules of Civil Procedure, a plaintiff seeking to raise medical malpractice claims must file a valid certificate of merit. That rule states, in pertinent part:

> (a) In any action based upon an allegation that a licensed professional deviated from an acceptable professional standard, the attorney for the plaintiff, or the plaintiff if not represented, shall file with the complaint or within sixty days after the filing of the complaint, a certificate of merit signed by the attorney or party that either
>
> > (1) an appropriate licensed professional has supplied a written statement that there exists a reasonable probability that the

11

> care, skill or knowledge exercised or exhibited in the treatment, practice or work that is the subject of the complaint, fell outside acceptable professional standards and that such conduct was a cause in bringing about the harm, or
>
> (2) the claim that the defendant deviated from an acceptable professional standard is based solely on allegations that other licensed professionals for whom this defendant is responsible deviated from an acceptable professional standard, or
>
> (3) expert testimony of an appropriate licensed professional is unnecessary for prosecution of the claim.

PA. R. CIV. P. 1042.3(a). The requirements of Rule 1042.3 are substantive in nature and, therefore, federal courts in Pennsylvania must apply these prerequisites of Pennsylvania law when assessing the merits of a medical malpractice claim. *See Liggon-Redding v. Estate of Sugarman*, 659 F.3d 258, 262-65 (3d Cir. 2011); *Iwanejko v. Cohen & Grigsby, P.C.*, 249 F. App'x 938, 944 (3d Cir. 2007) (nonprecedential). This requirement applies with equal force to counseled complaints and to *pro se* medical malpractice actions brought under state law. *See Hodge v. Dep't of Justice*, 372 F. App'x 264, 267 (3d Cir. 2010) (nonprecedential) (affirming district court's dismissal of medical negligence claim for failure to file a certificate of merit).

The Pennsylvania Supreme Court has noted that "[b]ecause the negligence of a physician encompasses matters not within the ordinary knowledge and experience of laypersons[,] a medical malpractice plaintiff must present expert testimony to establish the applicable standard of care, the deviation from that standard, causation and the extent of the injury." *Toogood*, 824 A.2d at 1145. A very narrow exception applies "where the matter

12

is so simple or the lack of skill or care is so obvious as to be within the range of experience and comprehension of even non-professional persons." *Hightower-Warren v. Silk*, 698 A.2d 52, 54 n.1 (Pa. 1997). However, three conditions must be met before the doctrine of *res ipsa loquitur*[1] may be invoked: "(a) either a lay person is able to determine as a matter of common knowledge, or an expert testifies, that the result which has occurred does not ordinarily occur in the absence of negligence; (b) the agent or instrumentality causing the harm was within the exclusive control of the defendant; and (c) the evidence offered is sufficient to remove the causation question from the realm of conjecture, but not so substantial that it provides a full and complete explanation of the event." *Toogood*, 824 A.2d at 1149-50.

The PrimeCare Defendants seek to dismiss Henry's professional negligence claim based on his failure to comply with Pennsylvania's certificate of merit requirements. On March 31, 2021, counsel for the PrimeCare Defendants mailed Henry a notice of intent to dismiss pursuant to Pennsylvania Rule 1042.6. (*See* Doc. 19). Henry filed a purported

---

[1] *Res ipsa loquitur* is a rule of evidence permitting an inference of negligence from the circumstances surrounding the injury. *Quinby v. Plumsteadville Family Practice, Inc.*, 589 Pa. 183, 907 A.2d 1061, 1071 (Pa. 2006). The Pennsylvania Supreme Court has adopted *res ipsa loquitur* as articulated in the Restatement (Second) of Torts § 328D. *Id.* (citation omitted). Under § 328D, it may be inferred that the harm suffered was caused by the negligence of the defendant when: (a) the event is the kind which does not ordinarily occur in the absence of negligence; (b) the evidence sufficiently eliminates other possible causes, including the conduct of the plaintiff and third parties; and (c) the indicated negligence is within the scope of the defendant's duty to the plaintiff. If the court determines that these prerequisites are met, it is for the jury to determine whether an inference of negligence should be drawn. *Toogood*, 824 A.2d 1140, 1149-50 (Pa. 2003) (holding that before *res ipsa loquitur* may be invoked, plaintiffs must meet the three § 328D conditions).

COM on January 21, 2022. (Doc. 43). In his COM, Henry briefly summarizes the allegations of the complaint and states that the PrimeCare Defendants "had a [m]edical and [l]egal obligation to inform Prison Officials that the excessive use of shackles was the cause of Plaintiff's injuries that they were treating." (*Id.* at p. 2). Henry's COM fails to comply with the requirements of Pennsylvania Rule 1042.3 in that it does not attest that an appropriate licensed professional supplied a written statement that there exists a reasonable probability that the care provided fell outside acceptable professional standards, or that expert testimony of an appropriate licensed professional is not necessary. PA. R. CIV. P. 1042.3(a)(1), (3). Nor does Henry attest that any claim that the PrimeCare Defendants deviated from an acceptable, professional standard is based solely on allegations that other licensed professionals for whom the defendant is responsible deviated from an acceptable professional standard. PA. R. CIV. P. 1042.3(a)(2).

Henry requires expert testimony to establish that medical personnel were negligent in providing medical care. This is not a case where a licensed medical professional's deviation from the standard of care and that deviation's causation of injury are obvious and within the realm of a layperson. Accordingly, the PrimeCare Defendants' motion to dismiss the professional negligence claim will be granted based on Henry's failure to file a COM that substantially complies with the requirements of Rule 1042.3. *See, e.g., Booker v. United States*, 366 F. App'x 425, 427 (3d Cir. 2010) (nonprecedential) (the usual consequence for

failing to file a certificate of merit that complies with Rule 1042.3 is dismissal of the claim without prejudice).

### D. Claim Pursuant to the Pennsylvania Constitution

Henry also seeks damages based on an alleged violation of the Pennsylvania Constitution. As the Third Circuit has recognized, however, "[n]o Pennsylvania statute establishes, and no Pennsylvania court has recognized, a private cause of action for damages under the Pennsylvania Constitution." *Pocono Mtn. Charter Sch. v. Pocono Mtn. Sch. Dist.*, 442 F. App'x 681, 687 (3d Cir. 2011) (nonprecedential). Accordingly, the Court will dismiss Henry's claim pursuant to the Pennsylvania Constitution.

## IV. Leave to Amend

When a complaint fails to present a prima facie case of liability, district courts must generally grant leave to amend before dismissing the complaint. *See Grayson v. Mayview State Hosp.*, 293 F.3d 103, 108 (3d Cir. 2002); *Shane v. Fauver*, 213 F.3d 113, 116-17 (3d Cir. 2000). Specifically, the Third Circuit Court of Appeals has admonished that when a complaint is subject to dismissal for failure to state a claim, courts should liberally grant leave to amend "unless such an amendment would be inequitable or futile." *Phillips*, 515 F.3d at 245 (citing *Alston v. Parker*, 363 F.3d 229, 235 (3d Cir. 2004)). For the reasons set forth above, Henry's claims are factually and legally flawed. Thus, the Court concludes that granting leave to amend would be futile.

## V. Conclusion

The Court will grant the PrimeCare Defendants' motion (Doc. 25) to dismiss. A separate Order shall issue.

Robert D. Mariani
United States District Judge

Dated: March 8, 2022