**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

PAUL J. HENRY III,                                       :        Civil No. 3:21-cv-247
                                                         :
                        Plaintiff                        :        (Judge Mariani)
                                                         :
          v.                                             :
                                                         :
YORK COUNTY, *et al.*,                                   :
                                                         :
                        Defendants                       :

## MEMORANDUM

Plaintiff Paul J. Henry III ("Henry"), an inmate who was housed at all relevant times

at the York County Prison, in York, Pennsylvania, commenced this action pursuant to 42

U.S.C. § 1983.  (Doc. 1).  Named as Defendants are, *inter alia*, York County, York County

Prison Board, Michelle Pokrifka, Donald L. Reihart, Clair Doll, Adam Ogle, Valerie Conway,

Unit Manager Hartman, Captain Snyder, Captain Cuti, Lieutenant Cessna, Lieutenant

Collins, Sergeant Curry, Sergeant Fetrow, CERT Officer Bolden, Correctional Officer Henry,

Correctional Counsel Crist Grievance Coordinator, Counselor Gail, and John Does

(collectively, the "York County Defendants").  (Doc. 1).  Presently pending before the Court

is the York County Defendants' motion (Doc. 21) to dismiss pursuant to Federal Rule of Civil

Procedure 12(b)(6).  Henry failed to respond to the motion and the time for responding has

now passed.[1]  Therefore, the motion is deemed unopposed and ripe for resolution.  For the

reasons set forth below, the Court will grant the York County Defendants' motion.  The

Court will also dismiss the claims against the John Doe Defendants pursuant to Federal

Rule of Civil Procedure 4(m).

## I.    **Allegations of the Complaint**

Henry alleges that the York County Prison uses shackles that are too small and

caused injuries to his ankles.  (Doc. 1, pp. 18, 23, 25).  He asserts that he was placed in the

Intensive Custody Unit after being put on suicide watch, which requires shackles when

outside of the cell.  (*Id.* at p. 18).  During his incarceration, Henry walked to the law library to

do research and was required to be shackled while visiting the law library.  (*Id.* at p. 21).  He

also alleges that he was placed in a holding tank in shackles, which caused numbness in

his toes.  (*Id.*).  Henry states that he was "immediately" provided pain medication for his

ankles.  (*Id.* at p. 19).  After further examination, he was provided stronger pain medication

for his ankles.  (*Id.* at p. 23).

Henry alleges that Defendants Pokrifka and Reihart deemed him a "nuisance filer"

for complaining about the use of the shackles.  (*Id.* at p. 26).

On May 6, 2019, Henry filed a grievance requesting photographs of his ankles.

(*Id.*at p. 27).  Henry alleges that he did not receive the photographs of his ankles.  (*Id.*).

---

[1]    Henry was directed to file a brief in opposition to the York County Defendants' motion and was
admonished that failure to file an opposition brief would result in Defendants' motion being deemed
unopposed.  (Docs. 50, 54) (citing M.D. PA. LOCAL RULE OF COURT 7.6).

On June 10, 2020, Henry was placed in general population and was assigned a top

bunk. (*Id.*). He alleges that he was required to "jump up and down" to his bed, which

caused pain and suffering. (*Id.*). On November 9, 2020, Defendant Reihart purportedly

assigned Henry a bottom bunk status. (*Id.* at p. 28).

Henry alleges that he was denied hygiene products and denied a shower during his

last three days at the York County Prison. (*Id.* at p. 17).

On April 6, 2019, Defendant Crist allegedly dropped a wicket door on Henry's finger

while he was receiving medication for his ankle pain. (*Id.* at p. 29).

Henry next avers that he has a nail fungus which causes his nails to fall off. (*Id.* at

pp. 28-29). He alleges that his condition was examined, but he initially did not receive

medication for his nail fungus. (*Id.* at p. 30). A doctor subsequently prescribed Lamisil to

treat Henry's nail fungus. (*Id.*). On July 29, 2019, Henry filed a grievance relating to the nail

fungus. (*Id.* at p. 29). The grievance was denied. (*Id.*).

Henry contends that the York County Prison stopped all incoming and outgoing mail

at the prison and kept all original copies of legal mail. (*Id.* at p. 30). He avers that the York

County Prison subsequently changed their mail policy. (*Id.* at pp. 30-31).

On January 23, 2020, Henry complained about the technology provided for the

preparation of color photographs at the prison. (*Id.* at p. 31). A color printer was then

provided for the printing of legal emails. (*Id.*). Henry asserts that he was denied law library

services and that the prison library does not have a proper computer to complete legal

forms or file complaints and motions. (*Id.* at p. 32). Henry was allegedly advised that the law library was temporarily closed due to the COVID-19 pandemic and that inmates could use portable electronic tablets for legal research. (*Id.* at pp. 32-33). Henry asserts that there are only eight tablets available for inmate use. (*Id.* at p. 33).

On August 7, 2020, a hearing was held relating to Henry's criminal matter. (*Id.* at p. 35). He attended the hearing *via* video conference and states that the hearing was held in a counselor's office at the prison with the door open. (*Id.* at pp. 35-36).

Henry alleges that he has not had his teeth cleaned despite undergoing yearly dental examinations. (*Id.* at p. 37). He was allegedly informed that his teeth could not be cleaned because of the COVID-19 pandemic. (*Id.*). Henry was also allegedly informed that he would be scheduled for a cleaning, but as of the date of the filing of his complaint, he was not aware of the cleaning appointment being scheduled. (*Id.*).

Henry asserts that he filed grievances related to his claims, but the grievances were "unanswered or ignored." (*Id.* at pp. 37-39). He alleges that Defendants retaliated against him for filing grievances. (*Id.* at p. 40). Specifically, he avers that he was denied the full names of all York County Prison staff and PrimeCare Medical staff and was denied a Right-to-Know Form. (*Id.*). Henry's criminal attorney subsequently provided him with a Right-to-Know Form and assisted in filling out the form. (*Id.*).

## II.   Legal Standards

### A.   Federal Rule of Civil Procedure 12(b)(6)

A complaint must be dismissed under FED. R. CIV. P. 12(b)(6), if it does not allege

"enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v.*

*Twombly*, 550 U.S. 544, 570, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007). The plaintiff must

aver "factual content that allows the court to draw the reasonable inference that the

defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 129 S. Ct.

1937, 1949, 173 L. Ed. 2d 868 (2009).

"Though a complaint 'does not need detailed factual allegations, . . . a formulaic

recitation of the elements of a cause of action will not do.'" *DelRio-Mocci v. Connolly Prop.*

*Inc.*, 672 F.3d 241, 245 (3d Cir. 2012) (citing *Twombly*, 550 U.S. at 555). In other words,

"[f]actual allegations must be enough to raise a right to relief above the speculative level."

*Covington v. Int'l Ass'n of Approved Basketball Officials*, 710 F.3d 114, 118 (3d Cir. 2013)

(internal citations and quotation marks omitted). A court "take[s] as true all the factual

allegations in the Complaint and the reasonable inferences that can be drawn from those

facts, but . . . disregard[s] legal conclusions and threadbare recitals of the elements of a

cause of action, supported by mere conclusory statements." *Ethypharm S.A. France v.*

*Abbott Laboratories*, 707 F.3d 223, 231, n.14 (3d Cir. 2013) (internal citations and quotation

marks omitted).

> *Twombly* and *Iqbal* require [a district court] to take the following three steps to
> determine the sufficiency of a complaint: First, the court must take note of the

elements a plaintiff must plead to state a claim.  Second, the court should identify allegations that, because they are no more than conclusions, are not entitled to the assumption of truth.  Finally, where there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement for relief.

*Connelly v. Steel Valley Sch. Dist.*, 706 F.3d 209, 212 (3d Cir. 2013).

"[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged - but it has not show[n] - that the pleader is entitled to relief." *Iqbal*, 556 U.S. at 679 (internal citations and quotation marks omitted).  This "plausibility" determination will be a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.*

However, even "if a complaint is subject to Rule 12(b)(6) dismissal, a district court must permit a curative amendment unless such an amendment would be inequitable or futile." *Phillips v. Cnty. of Allegheny*, 515 F.3d 224, 245 (3d Cir. 2008).

[E]ven when plaintiff does not seek leave to amend his complaint after a defendant moves to dismiss it, unless the district court finds that amendment would be inequitable or futile, the court must inform the plaintiff that he or she has leave to amend the complaint within a set period of time.

*Id.*

## B.    Civil Rights Statute, 42 U.S.C. § 1983

Section 1983 is the vehicle by which private citizens may seek redress for violations of federal constitutional rights committed by state officials.  *See* 42 U.S.C. § 1983.  The statute states, in pertinent part:

6

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.

*Id.* "Section 1983 is not a source of substantive rights," but is merely a means through which "to vindicate violations of federal law committed by state actors." *Pappas v. City of Lebanon*, 331 F. Supp. 2d 311, 315 (M.D. Pa. 2004) (quoting *Gonzaga Univ. v. Doe*, 536 U.S. 273, 284-85 (2002)). To state a cause of action under Section 1983, a plaintiff must allege that: (1) the conduct complained of was committed by persons acting under color of state law; and (2) the conduct violated a right, privilege, or immunity secured by the Constitution or laws of the United States. *See Harvey v. Plains Twp. Police Dep't*, 421 F.3d 185, 189 (3d Cir. 2005) (quoting *West v. Atkins*, 487 U.S. 42, 48 (1988)).

III. **Discussion**

   A. **Claims against Defendants Pokrifka and Reihart**

   Henry has failed to allege the requisite personal involvement of York County Solicitor Michelle Pokrifka and Assistant Solicitor Donald Reihart. Nothing in Henry's complaint plausibly suggests that Defendants Pokrifka and Reihart were involved in his medical care or were responsible for enacting any policy related to prison medical care. Moreover, Defendants Pokrifka and Reihart, as solicitors and attorneys for York County, are not automatically state actors for purposes of § 1983. *See Angelico v. Lehigh Valley Hosp.,* 184

F.3d 268, 276-78 (3d Cir. 1999). To the extent that an attorney renders advice, drafts

correspondence on behalf of a client, or otherwise engages in legal activities, he or she will

generally not be subject to liability as a state actor. *Id.* Here, the complaint does not allege

that Defendants Pokrifka and Reihart invoked the force of the state to accomplish their

clients' goals or went beyond their traditional roles to actually make official policy decisions.

*See id.* at 277. The motion to dismiss with respect to Defendants Pokrifka and Reihart will

be granted.

### B. Eighth Amendment Claim

The Eighth Amendment prohibits the infliction of cruel and unusual punishment on

prisoners. *See Wharton v. Danberg*, 854 F.3d 234, 247 (3d Cir. 2017). There are several

types of Eighth Amendment claims, including claims alleging: denial of, or inadequate

access to, medical care; exposure to adverse conditions of confinement; the use of

excessive force; and failure to protect from assaults by other inmates. An Eighth

Amendment claim includes both objective and subjective components. *See Wilson v.

Seiter*, 501 U.S. 294, 298 (1991). Under the objective prong, the Court must consider "if the

alleged wrongdoing was objectively 'harmful enough' to establish a constitutional violation."

*Hudson v. McMillian*, 503 U.S. 1, 8 (1992) (quoting *Wilson*, 501 U.S. at 298). However,

"[w]hat is necessary to show sufficient harm for purposes of the Cruel and Unusual

Punishments Clause depends upon the claim at issue." *Id.* The subjective component is

met if the person or persons causing the deprivation acted with "a sufficiently culpable state of mind." *Wilson*, 501 U.S. at 298.

### 1. *Conditions of Confinement Claim*

In order to succeed on a claim as to one's conditions of confinement, a plaintiff must establish that: "(1) he was incarcerated under conditions posing a substantial risk of serious harm, (2) the official was deliberately indifferent to that substantial risk to his health and safety, and (3) the official's deliberate indifference caused him harm." *Bistrian v. Levi*, 696 F.3d 352, 367 (3d Cir. 2015). "[T]he Constitution does not mandate comfortable prisons." *Rhodes v. Chapman*, 452 U.S. 337, 349 (1981). Therefore, conditions of imprisonment violate the Eighth Amendment only if they, "alone or in combination . . . deprive inmates of the minimal civilized measures of life's necessities." *See id.* at 347. Such necessities include "adequate food, clothing, shelter, and medical care." *Farmer v. Brennan*, 511 U.S. 825, 832 (1994). Thus, "extreme deprivations are required to make out a conditions-of-confinement claim." *Hudson*, 503 U.S. at 9. However, "[s]ome conditions of confinement may establish an Eighth Amendment violation 'in combination' when each would not do so alone, but only when they have a mutually enforcing effect that produces the deprivation of a single, identifiable human need such as food, warmth, or exercise." *Mammana v. Fed. Bureau of Prisons*, 934 F.3d 368, 372 (3d Cir. 2019) (quoting *Wilson*, 501 U.S. at 304 and *Rhodes*, 452 U.S. at 347).

Henry alleges that he was denied hygiene products and denied the ability to shower during his last three days at the York County Prison. The complaint suggests that he was subjected to these conditions for a short duration of time. The conditions of which Henry complains, while potentially unpleasant, do not rise to the level of an Eighth Amendment violation. Henry has failed to adequately allege that he was deprived of "the minimal civilized measure of life's necessities." *Wilson*, 501 U.S. at 298; *see also Adderly v. Ferrier*, 419 F. App'x 135, 140 (3d Cir. 2011) (nonprecedential) (holding that denial of access to clothing, toiletries, legal mail, a pillow, a mattress, and showers for seven days did not "constitute a denial of the 'minimal civilized measures of life's necessities'") (quoting *Williams v. Delo*, 49 F.3d 442, 444-47 (8th Cir. 1995)). The Court, therefore, will dismiss Henry's Eighth Amendment claim concerning his conditions of confinement.

### 2. *Deliberate Indifference to Medical Needs*

In the context of medical care, the Eighth Amendment "requires prison officials to provide basic medical treatment to those whom it has incarcerated." *Rouse v. Plantier*, 182 F.3d 192, 197 (3d Cir. 1999). To establish an Eighth Amendment claim based on a prison's denial of medical care, an inmate must allege acts or omissions by prison officials that were sufficiently harmful to establish deliberate indifference to a serious medical need. *See Spruill v. Gillis*, 372 F.3d 218, 235 (3d Cir. 2004); *Natale v. Camden Cty. Corr. Facility*, 318 F.3d 575, 582 (3d Cir. 2003). The relevant inquiry is whether the defendant: (1) was subjectively deliberately indifferent (2) to the plaintiff's objectively serious medical needs.

*Farmer*, 511 U.S. at 834, 837; *Chavarriaga v. N.J. Dep't of Corr.*, 806 F.3d 210, 226 (3d Cir. 2015).

The "deliberate indifference" prong of the applicable Eighth Amendment analysis requires that the defendant actually know of and disregard "an excessive risk to inmate health or safety." *Farmer*, 511 U.S. at 837. Circumstantial evidence can establish subjective knowledge on the part of the defendant if it shows that the excessive risk was so obvious that the official must have known about it. *See Beers-Capitol v. Whetzel*, 256 F.3d 120, 133 (3d Cir. 2001) (citing *Farmer*, 511 U.S. at 842). The Third Circuit has found deliberate indifference when a prison official: "(1) knows of a prisoner's need for medical treatment but intentionally refuses to provide it; (2) delays necessary medical treatment based on a non-medical reason; or (3) prevents a prisoner from receiving needed or recommended medical treatment." *Rouse*, 182 F.3d at 197.

The second prong of the Eighth Amendment inquiry is whether the plaintiff's medical needs were serious. A serious medical need is "one that has been diagnosed by a physician as requiring treatment or one that is so obvious that a lay person would easily recognize the necessity for a doctor's attention." *Monmouth Cty. Corr. Inst. Inmates v. Lanzaro*, 834 F.2d 326, 347 (3d Cir. 1987). Not every condition is a serious medical need; instead, the serious medical need element contemplates a condition of urgency, namely, one that may produce death, degeneration, or extreme pain. *See id.*

Additionally, because only egregious acts or omissions can violate this standard, mere medical malpractice cannot result in an Eighth Amendment violation. *White v. Napoleon*, 897 F.2d 103, 108-10 (3d Cir. 1990); *Estelle v. Gamble*, 429 U.S. 97, 106 (1976) ("[M]edical malpractice does not become a constitutional violation merely because the victim is a prisoner."). The Supreme Court has held that negligence or inadvertence alone do not rise to the level of a constitutional violation. *Whitley v. Albers*, 475 U.S. 312 (1986). The Supreme Court has also noted that "[l]ack of due care suggests no more than a failure to measure up to the conduct of a reasonable person." *Daniels v. Williams*, 474 U.S. 327, 332 (1986). Where a state of mind is relevant, the complaint is inadequate if it merely contains conclusory allegations describing the requisite state of mind such as "intentionally" or "recklessly" without supporting factual allegations. *Wilson*, 501 U.S. 294. Additionally, prison medical authorities are given considerable latitude in the diagnosis and treatment of inmate patients, *see Young v. Kazmerski*, 266 F. App'x 191, 194 (3d Cir. 2008) (nonprecedential), and a doctor's disagreement with the professional judgment of another doctor is not actionable under the Eighth Amendment. *See White*, 897 F.2d at 108-10.

Furthermore, it is well-settled that an inmate's dissatisfaction with a course of medical treatment, standing alone, does not give rise to a viable Eighth Amendment claim. *See Brown v. Borough of Chambersburg*, 903 F.2d 274, 278 (3d Cir. 1990) ("[A]s long as a physician exercises professional judgment his behavior will not violate a prisoner's constitutional rights."); *Pearson v. Prison Health Servs.*, 850 F.3d 528, 535 (3d Cir. 2017)

("[W]hen medical care is provided, we presume that the treatment of a prisoner is proper absent evidence that it violates professional standards of care.").

In the complaint, Henry acknowledges that he was immediately treated for his ankle injuries and provided pain medication. He continued to receive treatment for his ankles and was prescribed even stronger pain medication. With respect to his nail fungus, Henry states that he was seen by medical staff for his nail fungus, but was initially told that no treatment was necessary, because it was a common problem. A doctor subsequently prescribed Lamisil. Henry also acknowledges that he received yearly dental examinations but asserts that he did not receive teeth cleaning. The allegations of the complaint reveal that Henry was examined and treated by medical personnel for his various medical needs. Henry's belief that he should have received different treatment constitutes a "mere disagreement as to the proper medical treatment," and is not an actionable Eighth Amendment claim. *Lanzaro*, 834 F.2d at 346.

For purposes of Eighth Amendment medical claims, nonmedical staff may not be "considered deliberately indifferent simply because they failed to respond directly to the medical complaints of a prisoner who was already being treated by the prison doctor." *Durmer v. O'Carroll*, 991 F.2d 64, 69 (3d Cir. 1993); *see also Spruill*, 372 F.3d at 236. Courts have repeatedly held that, absent some reason to believe that prison medical staff are mistreating prisoners, non-medical corrections staff who refer inmate medical

complaints to physicians may not be held personally liable for medically based Eighth Amendment claims. *See, e.g.*, *Spruill*, 372 F.3d at 236-37 (citing *Durmer*, 991 F.2d at 69).

With respect to the York County Defendants, Henry fails to establish a viable claim. The York County Defendants include the County, County Prison Board, Solicitor, Assistant Solicitor, prison wardens and deputy wardens, and non-medical prison personnel. These Defendants are not trained members of medical staff subject to liability for an Eighth Amendment claim. Because Henry was under the regular care of medical experts, the York County Defendants were justified in believing that he was in capable hands. *See Spruill*, 372 F.3d at 236; *Durmer*, 991 F.2d at 69. The Court will grant the York County Defendants' motion with respect to the Eighth Amendment Claim medical care claim.

### C.    Fourteenth Amendment Claim

Henry also asserts that the York County Defendants violated his Fourteenth Amendment procedural due process and equal protection rights. (Doc. 1, p. 14). For the reasons set forth below, the Court concludes that Henry has failed to set forth a plausible Fourteenth Amendment claim.

#### 1.    *Due Process*

The Due Process Clause of the Fourteenth Amendment guarantees that "[n]o State shall . . . deprive any person of life, liberty, or property, without due process of law." U.S. CONST. amend. XIV. Ordinarily, the concept of "due process" requires some type of hearing before the state can deprive a person of a protected interest. *Zinermon v. Burch*, 494 U.S.

113, 126 (1990) (collecting cases). However, in cases of random and unauthorized

deprivations of property the State cannot predict when the loss will occur and, therefore, is

unable to provide a meaningful hearing before the deprivation takes place. The Supreme

Court determined that, with respect to negligent, random and unauthorized acts by state

actors that result in the loss of a protected interest, a plaintiff does not suffer a violation of

procedural due process if he or she has an adequate post-deprivation remedy. *Parratt v.*

*Taylor*, 451 U.S. 527 (1981). The Supreme Court subsequently extended the rule in *Parratt*

to apply to intentional acts by state actors. *Hudson v. Palmer*, 468 U.S. 517 (1984); *see*

*also Barr v. Knauer*, 321 F. App'x 101, 103 (3d Cir. 2009) (nonprecedential).

　　　　The Third Circuit Court of Appeals has held that the state's grievance procedure

provides an adequate post-deprivation remedy, *see, e.g.*, *Tillman v. Lebanon County Corr.*

*Fac.*, 221 F.3d 410, 422 (3d Cir. 2000), and that the existence of this post-deprivation

remedy forecloses any due process claim, *Austin v. Lehman*, 893 F. Supp. 448, 454 (E.D.

Pa. 1995), even if an inmate is dissatisfied with the result of the process. *Iseley v. Horn*,

1996 WL 510090, at * 6 (E.D. Pa. 1996). "Because prisons are constitutionally required to

afford inmates only a post-deprivation remedy, . . . the defendants' failure to give the

inmates prior notice of their intended seizure of their materials did not violate the plaintiffs'

Due Process rights." *Monroe v. Beard*, 536 F.3d 198, 210 (3d Cir. 2008).

　　　　Henry appears to allege that the York County Defendants have adopted a policy that

condones acts of deliberate indifference to inmates' serious medical needs, and that the

15

policy itself violates the Due Process Clause of the Fourteenth Amendment. (Doc. 1, pp.

43-45). This claim fails on its face. The York County Prison has a grievance process that

provides for sufficient post-deprivation remedies—even if Henry is dissatisfied with the

result of that process. It is clear that Henry had notice of the grievance policy during his

incarceration at the York County Prison and utilized that grievance procedure. Therefore,

the Court will grant the York County Defendants' motion to dismiss with respect to Henry's

procedural due process claim.

### 2. *Equal Protection*

The Equal Protection Clause requires all persons "similarly situated" to be treated

alike by state actors. *See City of Cleburne v. Cleburne Living Ctr.*, 473 U.S. 432, 439

(1985). Traditionally, "[i]n order to establish a *prima facie* case of discrimination under the

Equal Protection Clause, [plaintiffs] need[] to prove that they were members of a protected

class [such as race or gender] and that they received different treatment than that received

by similarly-situated individuals." *Oliveira v. Twp. of Irvington*, 41 F. App'x 555, 559 (3d Cir.

2002). However, where a plaintiff alleges that he alone "has been intentionally treated

differently from others similarly situated and that there is no rational basis for the difference

in treatment," he may raise a "class of one" equal protection claim. *Engquist v. Or. Dep't of

Agric.*, 553 U.S. 591, 598 (2008). To maintain such a claim, a plaintiff must establish that

he has been irrationally singled out for disparate treatment. *See id.* "[A]t the very least, to

state a claim under [a class of one theory], a plaintiff must allege that (1) the defendant

treated him differently from others similarly situated, (2) the defendant did so intentionally, and (3) there was no rational basis for the difference in treatment." *Mosca v. Cole*, 217 F. App'x 158, 164 (3d Cir. 2007) (nonprecedential).  When alleging the existence of similarly situated individuals, plaintiffs "cannot use allegations . . . that amount to nothing more than 'conclusory, boilerplate language' to show that he may be entitled to relief," and "bald assertion[s] that other[s] . . . were treated in a dissimilar manner" will not suffice.  *Young v. New Sewickley Twp.*, 160 F. App'x 263, 266 (3d Cir. 2005) (nonprecedential) (citing *Evancho v. Fisher*, 423 F.3d 347, 353 (3d Cir. 2005)).

As an initial matter, neither prisoners nor indigent individuals constitute a suspect class.  *See Abdul-Akbar v. McKelvie*, 239 F.3d 307, 317 (3d Cir. 2011).  Thus, Henry fails to allege that he is a member of a suspect class.  Moreover, Henry fails to allege facts suggesting that he was intentionally treated differently from other similarly situated York County Prison inmates.  Henry's allegations amount to nothing more than conclusory language and bald assertions.  *See Young*, 160 F. App'x at 266.  The Court will grant the York County Defendants' motion to dismiss Henry's Fourteenth Amendment equal protection claim.

### D.   Fifth Amendment Claim

Henry alleges that he was "denied the right of liberty" under the Fifth Amendment, but he fails to set forth any facts in support of this claim.  (Doc. 1, p. 14).  The Fifth Amendment provides, *inter alia*, that no person "shall be deprived of life, liberty, or property

without due process of law." U.S. CONST. amend. V. However, the Fifth Amendment

prohibits the federal government—not state or local actors—from depriving citizens of life,

liberty, or property without due process of law. *See Public Utils. Comm'n v. Pollak*, 343 U.S.

451, 461 (1952); *see also Caldwell v. Beard*, 324 F. App'x 186, 189 (3d Cir. 2009)

(nonprecedential). The York County Defendants are state actors, and the Fifth Amendment

does not restrict their actions, as it only limits federal government action. The Court will

dismiss Henry's Fifth Amendment claim.

### E.   Fourth Amendment Claim

Henry next alleges that his Fourth Amendment rights were violated because he was

"denied the right to be secure safely while incarcerated in York County at York County

Prison." (Doc. 1, p. 14). He fails to set forth any facts related to a purported search or

seizure in violation of his Fourth Amendment rights. The Fourth Amendment protects "[t]he

right of the people to be secure in their persons . . . against unreasonable searches and

seizures." U.S. CONST. amend. IV. To the extent that Henry asserts that the York County

Defendants violated his Fourth Amendment rights by taking his property, "the Fourth

Amendment proscription against unreasonable searches does not apply within the confines

of the prison cell." *Hudson*, 468 U.S. at 526. Additionally, any interaction with the York

County Defendants for purposes of resolving a grievance cannot, under any set of facts, be

construed as an illegal search or seizure. For these reasons, Henry cannot maintain a

Fourth Amendment claim.

### F.     First Amendment Claim

To state a retaliation claim under the First Amendment, a plaintiff bears the burden of satisfying three elements.  First, a plaintiff must prove that he was engaged in a constitutionally protected activity.  *See Rauser v. Horn*, 241 F.3d 330, 333 (3d Cir. 2001). Second, a plaintiff must demonstrate that he "suffered some 'adverse action' at the hands of prison officials." *Id.* (quoting *Allah v. Seiverling*, 229 F.3d 220, 225 (3d Cir. 2000)).  This requirement is satisfied by showing adverse action "sufficient 'to deter a person of ordinary firmness' from exercising his First Amendment rights." *Id.* (quoting *Suppon v. Dadonna*, 2013 F.3d 228, 235 (3d Cir. 2000)).  Third, a prisoner must prove that "his constitutionally protected conduct was 'a substantial or motivating factor' in the decision to discipline him." *Rauser*, 241 F.3d at 333-34 (quoting *Mount Healthy City Sch. Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 287 (1977)).

The mere fact that an adverse action occurs after either a complaint or grievance is filed is relevant, but not dispositive, for the purpose of establishing a causal link between the two events.  *See Lape v. Pennsylvania*, 157 F. App'x 491, 498 (3d Cir. 2005) (nonprecedential).  Only when the facts of a particular case are "unusually suggestive" of a retaliatory motive will temporal proximity, on its own, support an inference of causation.  *See Krouse v. Am. Sterilizer Co.*, 126 F.3d 494, 503 (3d Cir. 1997).  The Third Circuit has noted that an inmate can satisfy this burden "with evidence of either (1) an unusually suggestive temporal proximity between the protected activity and the allegedly retaliatory action or (2) a

pattern of antagonism coupled with timing that suggests a causal link." *Watson v. Rozum*, 834 F.3d 417, 422 (3d Cir. 2002).

If a prisoner establishes a *prima facie* case of retaliation, the burden shifts to prison officials to show, by a preponderance of the evidence, that "they would have made the same decision absent the protected conduct for reasons reasonably related to a legitimate penological interest." *Rauser*, 241 F.3d at 334. "This is often referred to as the 'same decision defense.'" *Watson*, 834 F.3d at 422. If the prison officials can make this showing, it defeats the retaliation claim. *See Carter v. McGrady*, 292 F.3d 152, 159 (3d Cir. 2002).

In the instant action, the filing of a grievance qualifies as constitutionally protected activity. *See Watson*, 834 F.3d at 422-23. However, Henry has failed to adequately allege that the filing of a grievance motivated the York County Defendants to take adverse action. Henry asserts that he was denied a list of the names of all York County Prison staff and PrimeCare Medical staff and was denied a Right-to-Know Form. These alleged acts are not adverse actions sufficient to deter a person of ordinary firmness from exercising his constitutional rights. Henry's complaint, as pled, fails to set forth a retaliation claim. Accordingly, the Court will grant the York County Defendants' motion to dismiss the First Amendment retaliation claim.

## IV.   Federal Rule of Civil Procedure 4(m)

Rule 4(m) sets forth the following time frame a plaintiff has to serve a defendant with the summons and copy of the complaint:

> If a defendant is not served within 90 days after the complaint is filed, the court -- on motion or on its own after notice to the plaintiff -- must dismiss the action without prejudice against that defendant or order that service be made within a specified time. But if the plaintiff shows good cause for the failure, the court must extend the time for service for an appropriate period.

FED. R. CIV. P. 4(m).

The John Doe individuals were named as Defendants in the complaint that was filed on or about February 11, 2021 and, to date, have not been properly identified.  The Court must engage in a two-step process in determining whether to dismiss the unidentified Defendants or grant Henry additional time to effect service.  "First, the district court should determine whether good cause exists for an extension of time.  If good cause is present, the district court must extend time for service and the inquiry is ended.  If, however, good cause does not exist, the court may in its discretion decide whether to dismiss the case without prejudice or extend time for service." *Petrucelli v. Bohringer & Ratzinger*, 46 F.3d 1298, 1305 (3d Cir. 1995).  Good cause requires good faith on the part of the party seeking an enlargement and some reasonable basis for noncompliance with the time specified in the rules. *MCI Telecomm. Corp. v. Teleconcepts, Inc.*, 71 F.3d 1086, 1097 (3d Cir. 1995).  In determining whether good cause exists, a court's "primary focus is on the plaintiff's reasons for not complying with the time limit in the first place." *Id.*  Although prejudice is a factor to be considered, the absence of prejudice to the opposing party alone does not constitute good cause to excuse late service. *Id.*

In the present matter, Henry failed to establish good cause.  After the expiration of the ninety-day time period set forth in Rule 4(m), the Court notified Henry that the action against the John Doe Defendants was subject to dismissal and directed him to show cause why the action against these Defendants should not be dismissed pursuant to Rule 4(m).  (Doc. 37).  In response to the Rule 4 show cause Order, Henry asserts that because Defense Counsel entered an appearance on behalf of the John Doe Defendants, this "strongly suggests he not only identified them for representation, but also for payment." (Doc. 41, p. 4).  Defense Counsel's entry of appearance on behalf of the John Doe Defendants does not relieve Henry of his obligation to provide names and accurate mailing addresses for all Defendants.  Moreover, in general, Henry's *pro se* status is not good cause to excuse his failure to timely identify these Defendants.  *Veal v. United States*, 84 F. App'x 253, 256 (3d Cir. 2004) (nonprecedential).  Based upon the lack of any reasonable explanation for his failure to adhere to the requirements of Rule 4, the Court finds that Henry failed to establish good cause.

If a plaintiff cannot show good cause for his failure to serve a defendant within ninety days, a district court may either dismiss the defendant, or exercise its discretion to order that service be made within a specific time.  *Petrucelli*, 46 F.3d at 1305; *see also* FED. R. CIV. P. 4(m).  It is Henry's responsibility to properly identify all Defendants, and provide accurate mailing addresses for the Defendants, in a timely fashion.  (*See* Doc. 12 ¶ 7) (advising Henry that failure to properly name a Defendant, or provide an accurate mailing

address for a Defendant, may result in dismissal of the claims against that Defendant pursuant to Federal Rule of Civil Procedure 4(m)).  In light of Henry's lack of good faith effort to properly identify the John Doe Defendants despite this Court's warning of the possible consequences, including dismissal, the Court concludes that dismissal is appropriate under the present circumstances.  Accordingly, the unidentified Defendants will be dismissed from this action.

## V.    Leave to Amend

When a complaint fails to present a prima facie case of liability, district courts must generally grant leave to amend before dismissing the complaint.  *See Grayson v. Mayview State Hosp.*, 293 F.3d 103, 108 (3d Cir. 2002); *Shane v. Fauver*, 213 F.3d 113, 116-17 (3d Cir. 2000).  Specifically, the Third Circuit Court of Appeals has admonished that when a complaint is subject to dismissal for failure to state a claim, courts should liberally grant leave to amend "unless such an amendment would be inequitable or futile."  *Phillips*, 515 F.3d at 245 (citing *Alston v. Parker*, 363 F.3d 229, 235 (3d Cir. 2004)).  For the reasons set forth above, Henry's claims are factually and legally flawed.  Thus, the Court concludes that granting leave to amend would be futile.

## VI.   **Conclusion**

The Court will grant the York County Defendants' motion (Doc. 21) to dismiss.  A separate Order shall issue.

Robert D. Mariani
United States District Judge

Dated: March _22_, 2022